**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LAURA AHAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | File No. _____ |
| | ) | |
| LIFE TIME FITNESS, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, Ms. Laura Ahammer ("Plaintiff" or "Ms. Ahammer") submits the

following Complaint for Damages and Equitable Relief against Defendant Life

Time Fitness, Inc. ("Defendant" or "Life Time"):

## INTRODUCTION

1.

This is an employment case arising from Life Time's discrimination against

Ms. Ahammer on the basis of her sex and disability, interference with her rights

under the Family and Medical Leave Act, and retaliation against her for exercising

her federally protected rights.  Ms. Ahammer is an experienced business

development specialist in the health and fitness industry who achieved excellent

results for Life Time as an Assistant Sales Manager even while she suffered from a

1

disability and other serious medical conditions.  Life Time not only retaliated against Ms. Ahammer's for seeking medical leave and for requesting reasonable accommodation of her disability, but also failed to promote Ms. Ahammer because of her sex and retaliated against her for exercising her rights and complaining about this discrimination.

2.

Plaintiff asserts mixed motive and single motive discrimination and retaliation claims under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12102 et seq. ("ADAAA"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").  She seeks back pay and lost economic benefits of her employment, liquidated damages, reinstatement or front pay in lieu thereof, non-economic compensatory and punitive damages, and her reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

3.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a), 42 U.S.C. § 12117(a), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 2000e-5(f)(3).

4.

The violations of Plaintiff's rights occurred in the Northern District of Georgia.  Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

## PARTIES

5.

Plaintiff, Ms. Laura Ahammer, is a resident of Fulton County in the State of Georgia, and at all relevant times she was employed by Life Time as a Member Engagement Advisor and then Assistant Sales Manager in Life Time's Sales Department.

6.

Plaintiff was at all relevant times an "employee" of Life Time within the meaning of Title VII, 42 U.S.C. § 2000e(f).

7.

Plaintiff was at all relevant times an "employee" of Life Time within the meaning of the ADAAA, 42 U.S.C. § 12111(4).

8.

Plaintiff was at all relevant times an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

9.

Defendant Life Time Fitness, Inc., is a foreign corporation licensed to do business in Georgia.  Life Time is subject to the jurisdiction of this Court and may be served with process by personal service upon its registered agent, National Registered Agents, Inc., 1201 Peachtree Street Northeast, Suite 1240, Atlanta, Georgia 30361.

10.

Defendant meets the definition of an "employer" under Title VII, 42 U.S.C. § 2000e(b).

11.

Defendant is also an "employer" within the meaning of the ADAAA, 42 U.S.C. § 12111(5).

12.

Defendant is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

## ADMINISTRATIVE PROCEEDINGS

### 13.

Plaintiff timely filed charges of discrimination against Life Time with the United States Equal Employment Opportunity Commission ("EEOC").

### 14.

Plaintiff received the Notice of Right to Sue from the EEOC from her first charge of discrimination within the last (90) days, and has complied with all other conditions precedent to the assertion of her claims within the scope of that charge under the ADAAA and Title VII in this lawsuit.

### 15.

 Plaintiff filed a second charge of discrimination and amendment with the EEOC, and will request the Notice of Right to Sue as to her second EEOC charge and any amendments and will promptly amend her complaint upon receipt thereof.

## FACTS

### 16.

In June 2014, Ms. Ahammer applied for the position of Assistant Department Head of Personal Training at Defendant's "Vestavia Hills" facility in Birmingham, Alabama.

5

17.

In mid-July 2014, Defendant offered Ms. Ahammer the Assistant Department Head of Personal Training position.

18.

Ms. Ahammer accepted the position and began the costly process of relocating from Altanta, Georgia to Birmingham, Alabama.

19.

Shortly after Ms. Ahammer accepted the position, Defendant informed Ms. Ahammer that the Assistant Department Head of Personal Training position was no longer available.  Instead, Defendant offered Ms. Ahammer a lower-paying Member Engagement Advisor ("MEA") position.

20.

Ms. Ahammer nevertheless accepted the lower-paying position and began working for Defendant as an MEA in September 2014.

21.

Ms. Ahammer quickly established herself as one of the company's highest-level performers, achieving top twenty month-over-month performance.

22.

When the facility's Assistant Sales Manager ("ASM") departed in the spring of 2015, Ms. Ahammer assumed and performed many of the responsibilities of that position in addition to her responsibilities as MEA.

23.

By the end of March 2015, Ms. Ahammer continued to excel and was ranked seventh among all of Defendant's salespersons nationwide.

24.

 In March 2015, Ms. Ahammer applied for a promotion to the Assistant Sales Manager position.

25.

The position was given instead to another employee, Jeremy Jackson, despite Jackson's lack of experience in the base MEA position.

26.

Ms. Ahammer ultimately trained Jackson in a number of the core competencies of his new role.

27.

Ms. Ahammer complained to management, including Member Services Manager Steven Gum and Sales Manager Tyler Glenn, about being passed over for the position in favor of a less qualified male candidate.

28.

Shortly after Ms. Ahammer's complaint about sex discrimination to Mr. Glenn, he issued Ms. Ahammer a disciplinary action for insubordination.

29.

In June 2015, Ms. Ahammer was given a newly-created title of Corporate Account Lead ("CAL") which included an extra monthly stipend of five hundred (500) dollars.

30.

Ms. Ahammer suffers from abdominal adhesion, a physical impairment and disability which is exacerbated through long periods of stationary work.

31.

Ms. Ahammer's physician instructed her to seek accommodation of her disability by requesting permission to sit on an exercise ball instead of an office chair.

32.

Other employees at the facility were allowed to sit on exercise balls as a matter of course.

33.

In early July 2015, Ms. Ahammer requested from Mr. Glenn and General Manager Timothy King the reasonable accommodation of being permitted to sit on an exercise ball rather than an ordinary chair.

34.

Ms. Ahammer's request was met with delay, obstruction and refusal of the request.

35.

In late August 2015, Ms. Ahammer was called into a meeting with Messrs. Glenn and King.

36.

During this meeting, Mr. King told Ms. Ahammer that requests for accommodation had to be submitted to Defendant's Leave Administrator, Tracy Clark.

37.

Also during this meeting, Mr. King informed Ms. Ahammer that Defendant would cease paying her the five hundred (500) dollar stipend associated with the CAL position.

38.

On August 27, Ms. Ahammer was given permission to sit on an exercise ball.

39.

On September 11, 2015, Ms. Ahammer filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendant had failed to promote her because of her gender and that Defendant had retaliated against her for raising her concern over this discrimination.

40.

In November 2015, Ms. Ahammer received a call from two employees in Defendant's Atlanta club: General Manager Andrew Brook and Sales Manager Nick Whitehead.

41.

They asked if Ms. Ahammer would be willing to transfer to the Atlanta club as Corporate Account Lead.

42.

Ms. Ahammer agreed to the transfer and began working in the Atlanta office on December 1, 2015.

43.

In February 2016, Defendant's Area Director Pat Fricano suggested that Ms. Ahammer apply for a corporate Business Development Manager ("BDM") position that would soon be open.

44.

Around the same time, Sales Manager Nick Whitehead told Ms. Ahammer that she should apply for an ASM position because that would put her further along the "corporate track" and make her a better candidate for the BDM position.

45.

On April 17, 2016, Defendant announced that the BDM position would be filled by Tyler Glenn.

46.

Glenn was substantially less qualified that Ms. Ahammer for the BDM position.

47.

At the time of the announcement, Mr. Fricano told Ms. Ahammer that Defendant was considering her for a "pilot program."

48.

On April 25, 2016, Ms. Ahammer suffered a hemothrax resulting in the collapse of one of her lungs.

49.

As a consequence of the hemothrax, Ms. Ahammer underwent emergency surgery and was on FMLA leave for six weeks.

50.

While Ms. Ahammer was on FMLA leave, Area Director Pat Fricano discussed with General Manager Andrew Brook the possibility of changing Ms. Ahammer's position.

51.

Defendant also promoted Carlos Carthen, another male who was substantially less qualified than Ms. Ahammer, to ASM while Ms. Ahammer was on leave.

52.

Upon her return, Ms. Ahammer discovered that Defendant had altered her compensation code to that of the lower "Account Manager" position.

53.

Around this time, Ms. Ahammer was told by Mr. Whitehead that the company had no intention of promoting her because of her "lawsuits" and likened her situation to that of Troy Vincent, a former employee of Defendant's who had asserted race discrimination claims against the company.

54.

Mr. Whitehead also explained that her transfer to the Atlanta club was a result of her complaints.

55.

On August 1, 2016, Defendant promoted Sergio Santana to Acting Sales Manager despite the fact that he had received none of Life Time's management-related training.

56.

On September 7, 2016, Ms. Ahammer filed a second Charge of Discrimination with the EEOC alleging that Defendant's failure to promote her to

the BDM position was discriminatory and in retaliation for filing her September

2015 Charge with the EEOC.

57.

On September 27, 2016, Ms. Ahammer suffered a further abdominal

adhesion.  She was found pale and barely conscious at her desk and was taken to

the hospital.

58.

Ms. Ahammer requested FMLA leave and ultimately underwent surgery on

October 31, 2016.

59.

A few days into Ms. Ahammer's FMLA leave, Defendant promoted Sergio

Santana for the second time in six months, to Ms. Ahammer's position of ASM.

60.

During Ms. Ahammer's leave, Defendant also transferred an ASM from

another club to the Atlanta club.

61.

When Ms. Ahammer returned to work on November 28, 2016, she

discovered that she been removed from the "sightlines" in Defendant's database,

14

rendering her unable to properly view company-generated leads, and effectively preventing her from doing her job.

62.

Ms. Ahammer was required to take about two weeks of FMLA leave when her son underwent surgery in mid-December 2016.  She returned to work on January 4, 2017.

63.

On January 17, 2017, Director of Human Resources Mary Jo Manella spoke with Ms. Ahammer by phone and told her that Defendant was going to implement a "transition plan" for her.

64.

When Ms. Ahammer asked what kind of transition was being planned, Ms. Manela explained that it was "transition" out of Defendant's company and she should go home.

65.

In an email the following day, Ms. Manela confirmed that Ms. Ahammer had been terminated.

66.

Ms. Ahammer was never given a reason for her termination.

## COUNT I

**DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA**

67.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

68.

At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

69.

Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

70.

Defendant intentionally discriminated against Plaintiff by subjecting her to adverse employment actions including, but not limited to, denying her reasonable accommodations and terminating her employment, because of her disabilities.

16

71.

Defendant violated Plaintiff's rights under the ADAAA, 42 U.S.C. § 12112, by discriminating against her because of her disabilities.

72.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, including social security, all in an amount to be established at trial.

73.

Defendant's actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

74.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

75.

Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT II

## RETALIATION IN VIOLATION OF THE ADAAA

76.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

77.

At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

78.

Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

79.

Plaintiff engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy her rights under the ADAAA, including but not limited to, requesting a reasonable accommodation for her disabilities.

80.

Defendant subjected Plaintiff to adverse employment actions including, but not limited to, reducing her salary and terminating her employment, because she engaged in statutorily protected activity under the ADAAA.

81.

Defendant's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

82.

As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, including social security, all in an amount to be established at trial.

83.

Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

84.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

85.

Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT III

### INTERFERENCE IN VIOLATION OF THE FMLA

86.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

87.

Plaintiff was an "eligible employee" who was entitled to a total of twelve (12) workweeks of leave per year because of her serious health condition pursuant to 29 U.S.C. § 2612(a)(1)(D).

88.

By repeatedly moving other employees into Plaintiff's position while she was on leave, terminating her employment when she was entitled to take leave under 29 U.S.C. § 2612(a)(1)(D), and considering her use of protected leave as a "motivating factor" in the decision to terminate her employment, among other actions, Defendant interfered with and prevented Plaintiff from exercising the rights provided to her under the FMLA.

89.

The actions of Defendant in interfering with Plaintiff's leave under the FMLA were committed with reckless disregard for her right to take up to twelve

21

(12) workweeks of leave time because of her serious health condition and in violation of 29 U.S.C. § 2612(a)(1)(D).

90.

]Defendant's actions have deprived Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits.

91.

Because of Defendant's violations of the FMLA, Plaintiff is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

92.

Plaintiff also is entitled to liquidated damages for Defendant' willful violation of her rights under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

93.

Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT IV

## RETALIATION IN VIOLATION OF THE FMLA

94.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

95.

Plaintiff was an "eligible employee" who was entitled to a total of 12 workweeks of leave per year because of her serious health condition within the meaning of 29 U.S.C. § 2612(a)(1)(D).

96.

By terminating Plaintiff's employment because she exercised and attempted to exercise rights under 29 U.S.C. § 2612(a)(1)(D), and/or by considering Plaintiff's use of protected leave and/or other exercise or attempt to exercise rights under the FMLA as a "motivating factor" in the decision to terminate her employment, among other things, Defendant retaliated against Plaintiff because of her exercise of rights under the FMLA.

97.

Defendant's actions in retaliation against Plaintiff were committed with reckless disregard for her right to take up to twelve (12) workweeks of leave time because of her serious health condition, in violation of 29 U.S.C. § 2612(a)(1)(D).

98.

Defendant's unlawful actions have deprived Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits.

99.

Because Defendant's violations of the FMLA, Plaintiff is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

100.

Plaintiff also is entitled to liquidated damages for the willful violation of her rights under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

101.

Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT V

## SEX AND/OR "SEX PLUS"
## DISCRIMINATION IN VIOLATION OF TITLE VII

102.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

103.

Plaintiff is a member of a protected class because she is a woman.

104.

Plaintiff was subjected to different terms and conditions of employment, including, but not limited to, being denied promotions in favor of less-qualified male candidates and terminated on the basis of her sex.

105.

Alternatively, Plaintiff was subjected to different terms and conditions of employment, including, but not limited to, being denied promotions in favor of less-qualified male candidates and terminated on the basis of her sex plus her

disability and/or sex plus her exercise of rights under the ADAAA, Title VII, and/or entitlement to or exercise of rights under the FMLA.

106.

Plaintiff's sex and/or her sex plus her disability, and/or her sex plus her exercise of rights under the ADAAA, Title VII, and/or entitlement to or exercise of rights under the FMLA, was a "motivating factor" in Defendant's decisions to subject her to adverse employment actions including, but not limited to, denying her promotions in favor of less-qualified male candidates and terminating her employment, even if one or more of these protected characteristics was not the only factor that motivated the decisions to take these adverse employment actions.

107.

The above-pled discriminatory conduct constitutes unlawful sex and/or "sex plus" discrimination in violation of Title VII of the Civil Rights Act of 1964.

108.

Defendant acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under Title VII, and acted in reckless disregard for her rights under Title VII.

109.

As a result of Defendant' discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

110.

Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay or reinstatement in lieu of front pay, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## COUNT VI

## RETALIATION IN VIOLATION OF TITLE VII

111.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

112.

Plaintiff engaged in statutorily protected activity by, among other things, objecting to and opposing practices made unlawful under Title VII and/or participating in proceedings or activities designed to enforce Title VII.

113.

Defendant subjected Plaintiff to adverse employment actions including, but not limited to, denying her promotions and terminating her employment because she engaged in statutorily protected activity under Title VII.

114.

Defendant's actions violated  Title VII, which prohibits employers from discriminating against an individual because she has opposed any practice made an unlawful employment practice under Title VII or because she has participated in any manner in an investigation, proceeding, or hearing under Title VII, 42 U.S.C. § 2000e-3(a).

115.

As a direct and proximate result of Defendant' unlawful retaliation against Plaintiff, she has suffered out of pocket losses and has been deprived of economic benefits, including income in the form of wages and other benefits, including social security, all in an amount to be established at trial.

116.

Defendant' unlawful actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

117.

Defendant' unlawful actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

118.

Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That the Court take jurisdiction of this matter;

B.     That process be served;

C.     That the Court award Plaintiff her back pay and lost economic benefits of employment, including interest, in an amount to be determined at the trial of this case;

D.     That the Court award non-economic compensatory damages in an amount to be determined by the trier of fact;

E.     That the Court award Plaintiff liquidated damages under the FMLA;

F.     That the Court award Plaintiff punitive damages against Defendant in an amount to be determined by the trier of fact;

G.     That the Court enter an order reinstating Plaintiff to her employment with Defendant, or if this is not practicable, award Plaintiff front pay damages in lieu thereof;

H.     That the Court award Plaintiff her costs of litigation in this action and her reasonable attorney's fees;

I.     That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

J.     That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 1st day of May, 2017.

**BUCKLEY BEAL, LLP**

By:     _/s/ Brian J. Sutherland_
Georgia Bar No. 105408
bsutherland@buckleybeal.com
Isaac Raisner
Georgia Bar No. 925103
iraisner@buckleybeal.com

Promenade, Suite 900
1230 Peachtree Street, NE
Atlanta, GA  30309
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101

*Counsel for Plaintiff*